IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00714-PAB-NYW

DONNA M. SANDS,

      Plaintiff,

v.

INTEGON NATIONAL INSURANCE COMPANY, and
MERITAIN HEALTH, INC.,

      Defendants.

_____

**ORDER**
_____

This matter is before the Court on defendants' Motion to Exclude Bradley A.

Levin [Docket No. 100], defendants' Motion to Exclude John Kezer [Docket No. 101],

and plaintiff's Motion to Exclude Dr. Kenneth Beckman [Docket No. 102].

## I.   BACKGROUND

On May 22, 2017, defendant Integon National Insurance Company ("Integon")[1]

issued plaintiff a short-term medical insurance policy with a $1 million limit covering the

period from June 1, 2017 through August 31, 2017 ("First Policy").  Docket No. 63 at 3,

¶ 9.  On August 18, 2017, Integon issued a second short-term policy with a $1 million

limit covering the period from August 31, 2017 through November 28, 2017 ("Second

Policy").  *Id.*, ¶ 10.  Sometime "[d]uring the term of the First Policy, [plaintiff] suffered a

brain bleed injury" and was hospitalized and underwent craniotomy surgery and

_____

[1] National General Holdings Corporation is the holding company for Integon, and
plaintiff generally refers to National General instead of Integon in her complaint.  Docket
No. 63 at 1, ¶ 2.

subsequent inpatient rehabilitation.  *Id.*, ¶ 11.  While in rehabilitation, plaintiff fell, which required "additional care and treatment," including a second craniotomy.  *Id.*, ¶¶ 13, 15.  Plaintiff was released from inpatient care on October 7, 2017.  *Id.* at 4, ¶ 18.  Her medical bills totaled over $500,000, which were all submitted to Integon "and/or" Meritain Health, LLC ("Meritain").  *Id.*, ¶ 20.  Defendants "did not begin issuing payments for [plaintiff's] health care until after" plaintiff filed suit.  *Id.*, ¶ 21.  Plaintiff has paid "over $31,000" out of pocket.  *Id.* at 9, ¶ 44.

On March 8, 2018 plaintiff filed suit in state court.  *See* Docket No. 1-1.  Integon removed the case to federal court on March 27, 2018.  *See* Docket No. 1.  In her amended complaint, plaintiff brings claims for breach of contract against Integon, unreasonable delay or denial of benefits under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 against Integon and Meritain, statutory delay under Colo. Rev. Stat. § 10-16-106.5 against Integon and Meritain, common law bad faith against Integon and Meritain, and aiding and abetting a tortious act against Meritain.  *See* Docket No. 63 at 10-17.  Each party has now filed motions to exclude the opinions of expert witnesses or, in some cases, the witness himself.  *See* Docket Nos. 100, 101, 102.

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area.  Rather, the Court must "perform[] a two-step analysis."  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  After determining whether the expert is qualified, the proffered opinions must be assessed for reliability.  *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

In ruling on a Rule 702 motion, the district court has a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"  *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93).  Where an expert witness relies on experience, the expert "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes).  When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for

3

cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597.  It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness's opinions must demonstrate that the process by which the witness derived his or her opinions is reliable.  *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).  "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Allstate Sweeping, LLC v. City & Cty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011 WL 2173997, at *3 (D. Colo. June 2, 2011); the proponent need only  prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

Assuming the standard for reliability is met, the Court must also ensure that the proffered testimony will assist the trier of fact.  *See Kumho Tire*, 526 U.S. at 156; *United*

4

*States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). "Relevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

Finally, Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## III.  ANALYSIS

### A.  Defendants' Motion to Exclude Testimony of John Kezer

Defendants move to preclude John Kezer, an attorney, "from testifying at trial and/or otherwise limit[] Mr Kezer's proposed testimony." Docket No. 101 at 15. Mr. Kezer was disclosed by plaintiff as an expert on the insurance industry and relevant standards of care. *See* Docket No. 101-1 at 3-4. Defendants have three general categories of objections to Mr. Kezer's opinions: (1) he will offer improper legal opinions; (2) his opinions are unduly prejudicial under Federal Rule of Evidence 403; and (3) his opinions are duplicative of plaintiff's other insurance expert. Docket No. 101 at 9-14.

As an initial matter, defendants' motion fails to fully comply with the Court's Practice Standards, which state that a Rule 702 motion "shall identify with specificity each **opinion** the moving party seeks to exclude."  Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.G.  While defendants provide a number of examples of the types of opinions of Mr. Kezer that they wish to exclude, they nevertheless make a generalized challenge and seek to preclude Mr. Kezer from testifying at all during the trial.  The Court is unable to rule that Mr. Kezer's opinions should be excluded in their entirety because defendants have failed to demonstrate that each opinion set forth in Mr. Kezer's report should be excluded.  As a result, the Court will construe defendants' motion as a challenge to those opinions of Mr. Kezer that their motion reasonably identifies.  *See, e.g.*, Docket No. 101 at 10.

       1.  *Legal Opinions*

Defendants first argue that Mr. Kezer will improperly provide legal opinions to the jury.  *Id.*  Plaintiff responds that Mr. Kezer will not "simply instruct the jury what result to reach.  Instead, he [will] analyze[] the particular facts in light of his knowledge of industry standards and offer[] opinions based thereon."  Docket No. 108 at 9.

In some cases, such as insurance bad faith cases, expert witnesses are permitted to testify about relevant legal standards.  "[A]n expert's testimony is not *per se* inadmissible simply because it requires discussion of the law."  *Amica Life Ins. Co. v. Wetz*, No. 15-cv-1161-WJM-CBS, 2017 WL 897839, at *3 (D. Colo. Mar. 7, 2020).  "[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."  *Specht v.*

*Jensen*, 853 F.2d 805, 809 (10th Cir. 1988).  Such testimony "is proper under Rule 702

if the expert does not attempt to define the legal parameters within which the jury must

exercise its fact-finding function.  However, when the purpose of testimony is to direct

the jury's understanding of the legal standards upon which their verdict must be based,

the testimony cannot be allowed."  *Id.* at 809-10.  Testimony that "articulates the

ultimate principles of law governing the deliberations of the jury" is inadmissible.  *Id.* at

808.  While an expert may refer to the law in expressing his or her opinion, the expert

"may not state legal conclusions drawn by applying the law to facts."  *A.E. ex rel. Evans

v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991) (citations omitted).

Mr. Kezer is an expert on insurance industry claim handling standards.  Docket

No. 101-1 at 3-4.  Defendants do not challenge his qualifications.  Docket No. 101 at 9-

14.  Therefore, he may testify as to insurance industry standards codified in Colorado

and ones that are generally accepted within the Colorado insurance industry.  *See

O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 928 (D. Colo. 2017) (permitting an

insurance expert to offer his opinions on relevant industry standards but not permitting

the expert to opine on whether the insurance company met any legal standard).  Mr.

Kezer states that he will provide an overview of the legislative declaration to Colorado's

insurance laws and that the "breadth" of the legislative declaration "should be

considered" in evaluating defendants' conduct.  Docket No. 101-2 at 6.  Identifying

insurance industry claim handling standards does not require discussion of public policy

or legislative intent.  Moreover, a discussion of the public policy or legislative intent may

divert the jury's attention from the insurance industry standards themselves or suggest

that, even if an insurance company did not violate such standards, the jury should use public policy or legislative intent to determine liability. *See George v. Metro. Prop. & Cas. Ins. Co.*, No. 18-cv-01663-PAB-SKC, 2020 WL 70424, at *8 (D. Colo. Jan. 2, 2020) (excluding Mr. Kezer's testimony regarding public policy and legislative intent); *Gebremedhin v. Am. Family Mutual Ins. Co.*, No. 13-cv-02813-CMA-NYW, 2015 WL 4979742, at *6 (D. Colo. Aug. 21, 2015) (excluding insurance industry expert's opinions that "[did] not even refer to, let alone explain, industry standards"). While Mr. Kezer may briefly discuss the purpose or function short-term medical insurance, it must be closely tied to a discussion of insurance industry standards pertaining to such insurance.

Defendants also challenge seven additional opinions of Mr. Kezer that they argue are legal conclusions: (1) Mr. Kezer's application of Colo. Rev. Stat. § 10-3-1113, (2) the "import" of the Colorado Supreme Court's opinion in *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo. 1985), (3) the standards set forth in Colo. Rev. Stat. § 10-3-1103, Colorado's Unfair Claims and Deceptive Practices Act, (4) "[r]eferences" to Colorado's Unfair Claims Settlement Practices Act in Colo. Rev. Stat. § 10-3-1104(11)(h), (5) "[a]pplication of provisions of the National Association of Insurance Commissioners Market Conduct Standards," (6) the "requirements under Colorado law respecting individual health coverage plans," and (7) the outlining of Colorado's Prompt Payment of Claims Statute, Colo. Rev. Stat. § 10-16-106.5. Docket No. 101 at 10. Defendants argue that Mr. Kezer's opinions on the above topics "would impermissibly instruct the jury regarding the application of Colorado insurance law." *Id.*

The Court finds that, while Mr. Kezer is permitted to testify as to insurance

8

industry standards, and may testify that defendants' conduct did not conform with those standards, he may not apply legal standards from caselaw or statutes to state an opinion that defendants' conduct violated caselaw or statutes.  An expert is not permitted to "state legal conclusions drawn by applying the law to facts," *A.E. ex rel. Evans*, 936 F.2d at 476, because "such ultimate conclusions would not be helpful to the jury and would improperly intrude on its fact-finding function."  *O'Sullivan*, 233 F. Supp. 3d at 929 (excluding opinions that an insurance company's conduct violated the UCSPA).  Therefore, Mr. Kezer may not opine whether defendants met their duties under applicable caselaw or violated various statutes, but may testify whether, in his opinion, defendants' conduct conformed with specific insurance industry standards, including ones identified in those statutes.  *See id.* at 928 (ruling that expert could offer opinions whether defendant's conduct "differed, in factual terms, from the practices of other insurers" or from "relevant industry practices and standards," but could not opine about whether defendant's conduct "was unlawful or 'egregious'").  This exclusion includes any testimony regarding Mr. Kezer's interpretation of Colorado's Prompt Payment Statute and any alleged exceptions.  *See* Docket No. 108 at 5 (discussing legal application of a fraud exception to the prompt payment statute); Docket No. 115 (dedicating majority of defendants' reply to the application and interpretation of the prompt payment statute).

        2.   *"Irrelevant Topics"*

Next, defendants assert that Mr. Kezer opines on "irrelevant topics," such as (1) "Integon's Motion for Entry of Protective Order," (2) "Integon's Response to Plaintiff's

9

Motion for Leave to File an Amended Complaint and Jury Demand," (3) "Integon's and

Meritain's Answers to Plaintiff's Second Amended Complaint, and (4) "Colorado

Division of Insurance regulations, including Repealed and Repromulgated Regulation 1-

1-7 Record Retention."  Docket No. 101 at 11 (emphasis omitted).  Defendants fail to

identify any basis for excluding these "topics" and do not identify any specific opinion of

Mr. Kezer's that should be excluded.  As a result, to the extent defendants seek to

exclude these "topics," their motion is denied.

### 3. Incorrect Factual Assertions

Next, defendants seek to exclude under Rule 403 opinions of Mr. Kezer that

defendants believe incorporate incorrect factual assertions.  *See* Docket No. 101 at 14.

Defendants seek to exclude the following "incorrect" factual assertions: (1) defendants

violated the Health Insurance Portability Accountability Act ("HIPAA"), (2) "the language

'usual and customary' is not included in the policies nor is it defined," (3) defendants

improperly denied Mr. Ladd's bills, (4) defendants could have processed plaintiff's

claims before all the documentation for processing had been received, (5) there was

"no basis to deny claims associated with [p]laintiff's second surgery," and (6) "there was

no factual basis for reasonably believing there was a misrepresentation in the

applications."  *Id.*

Defendants argue that these statements will result in unfair prejudice because

"the jurors may be more likely to give Mr. Kezer's testimony undue weight, and may

assume Integon violated Colorado insurance law, even though Integon did not engage

in the practices are presented by Mr. Kezer."  *Id.* at 14.  Rule 403 provides that "[t]he

court may exclude relevant evidence if its probative value is substantially outweighed by

a danger of . . . unfair prejudice."   Fed. R. Evid. 403.  Defendants do not fully explain

how the above statements will result in unfair prejudice, and the Court does not find that

they will.  To the extent that defendants are arguing that Mr. Kezer's opinions are

factually incorrect, "the accuracy of the facts themselves is an issue more appropriately

reserved for trial."[2]  *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170,

1187 (D. Colo. 2018) (citing *United States v. Crabbe*, 556 F. Supp. 2d. 1217, 1224 (D.

Colo. 2008) ("The accuracy of the assumption is an issue for trial because it affects the

weight of the opinion.")).  However, the Court does find that Mr. Kezer's reference to a

potential HIPAA violation is irrelevant to the issues in this case and, as a result, will be

excluded.

### B.  Defendants' Motion to Exclude Testimony of Bradley Levin

Defendants move to preclude Mr. Levin "from testifying at trial and/or otherwise

limit[] Mr. Levin's proposed testimony."  Docket No. 100 at 15.  Mr. Levin was disclosed

by plaintiff as an expert on the insurance industry and insurance claims handling.

Docket No. 101-1 at 2-3.  Defendants have three general categories of objections to Mr.

Kezer's opinions: (1) he will offer improper legal opinions; (2) his opinions are unduly

prejudicial under Federal Rule of Civil Procedure 403; and (3) his opinions are

duplicative of plaintiff's other insurance expert.[3]  Docket No. 100 at 8-14.

---

[2] Plaintiff argues that, "[t]o the extent the [d]efendants seek to preclude expert
testimony regarding Colorado's Prompt Payment statute, . . . [d]efendants' allegation
that such testimony would confuse the jury is entirely unavailing."  Docket No. 108 at
12.  The Court already excluded Mr. Kezer's offered testimony regarding his legal
interpretation of the prompt payment statute.

[3] Defendants make additional arguments in their reply brief that are not in direct
response to plaintiff's response brief.  Docket No. 114 at 2-7.  As a result, the Court will

Defendants' motion again fails to fully comply with the Court's Practice Standards, which state that a Rule 702 motion "shall identify with specificity each **opinion** the moving party seeks to exclude." Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.G. While defendants provide examples of the types of Mr. Levin's opinions they wish to exclude, they nevertheless make a generalized challenge and seek to preclude Mr. Levin from testifying at all during the trial. The Court is unable to rule that Mr. Levin's opinions should be excluded in their entirety because defendants have failed to demonstrate that each opinion set forth in Mr. Levin's report falls into one of defendants' three categories. As a result, the Court will construe defendants' motion as a challenge to the specific opinions of Mr. Levin that defendants list.

### 1. Legal Opinions

Defendants first argue that Mr. Levin will improperly state legal opinions to the jury. Docket No. 100 at 9-10. Plaintiff responds that, "[w]hile [Mr. Levin] will certainly make reference to Colorado insurance laws because they inform the standard of care by which the [d]efendants' conduct here is to be measured, he will avoid instructing the jury on the law to be applied." Docket No. 109 at 4.

Defendants specifically seek to exclude Mr. Levin's opinion that Colorado law requires "an insurer be at all times actuated by good faith in all that it does. This duty is broad and touches upon every aspect of the insured-insurer relationship . . . . The duty

---

not consider those arguments. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief." (citations omitted)).

of good faith and fair dealing cannot be delegated to another party and it applies to the acts of an insurer's employees."  Docket No. 100 at 9.  Defendants also seek to exclude Mr. Levin's interpretation of the Colorado Prompt Payment Statute.  *Id.*

As stated above, in some circumstances, like insurance bad faith cases, an expert may testify about relevant legal standards.  Other than Mr. Levin's reference to the prompt payment statute, Mr. Levin does not specifically reference any caselaw or statute.  *See* Docket No. 100-1 at 2-3, ¶¶ 1-10.  Nevertheless, as was the case with Mr. Kezer, Mr. Levin may testify as to insurance industry standards and may testify that defendants' conduct did not conform with those standards, but he may not apply legal standards from caselaw or statutes to state an opinion that defendants' conduct violated caselaw or statutes.  An expert is not permitted to "state legal conclusions drawn by applying the law to facts,"  *A.E. ex rel. Evans*, 936 F.2d at 476, because "such ultimate conclusions would not be helpful to the jury and would improperly intrude on its fact-finding function."  *O'Sullivan*, 233 F. Supp. 3d at 929 (excluding opinions that an insurance company's conduct violated the UCSPA).  Therefore, Mr. Levin may not opine whether defendants met their duties under applicable caselaw or violated various statutes, but may testify whether, in his opinion, defendants' conduct conformed with specific insurance industry standards, including ones identified in statute.  *See id.* at 928 (ruling that expert could offer opinions whether defendant's conduct "differed, in factual terms, from the practices of other insurers" or from "relevant industry practices and standards" but could not opine about whether defendant's conduct "was unlawful or 'egregious'").  This exclusion includes any opinion regarding the legal application, or Mr. Levin's interpretation, of the prompt payment statute.

13

### 2. Irrelevant Opinions

Defendants seek to exclude under Rule 403 Mr. Levin's opinion that "there are fundamental problems with the manner in which National General established, implemented, marketed, and sold its short-term medical policites to insureds, including [plaintiff]."  Docket No. 100-1 at 3; Docket No. 100 at 11.  Defendants argue that plaintiff "did not review any marketing materials prior to purchasing the First Policy" and, as a result, testimony regarding defendants' marketing practices would result in unfair prejudice.  Docket No. 100 at 11-12.  Plaintiff argues that this is a factual dispute that is better reserved for cross-examination.  Docket No. 109 at 11.

The Court agrees with defendants that permitting Mr. Levin to provide testimony on defendants' marketing practices is irrelevant to the claims at this case and could result in unfair prejudice.  In her response, plaintiff does not dispute that she did not review any marketing materials and does not explain how defendants' marketing materials are relevant to the case or how they would assist the trier of fact.  *See id.* Plaintiff's complaint makes no reference to any marketing materials.  *See* Docket No. 131.  Were Mr. Levin permitted to testify regarding defendants' alleged improper marketing practices, the jury may make a decision based "on an improper basis," that is, that defendants' marketing practices has some bearing on their alleged delay or denial of claims.  *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011) (citation omitted).  As a result, any testimony regarding defendants' marketing practices will be excluded.

14

### 3. Post-Claim Underwriting

Finally, defendants seek to exclude, pursuant to Rule 403, Mr. Levin's testimony that Integon engaged in "post-claim underwriting."  Docket No. 100 at 12-13.  Mr. Levin describes the process of "post-claim underwriting" as: (1) an applicant completes an insurance application; (2) the insurance company takes a premium from the applicant; (3) the insurer issues a policy without first determining whether the applicant qualifies for coverage; and (4) after a claim is submitted, the insurer then seeks out information from the insured to avoid making payment of a claim.  Docket No. 100-1 at 3. Defendants contend that, even pursuant to this definition, defendants never engaged in this process, and the issue with plaintiff's claim and application was not whether she, "in fact, suffered from a pre-existing condition, but rather, whether the applicant knowingly or intentionally misrepresented information on the enrollment form."  Docket No. 100 at 13.  Plaintiff does not respond to this argument.  Rather, she argues that these are simply factual disputes which are "not proper in a 702 motion."  Docket No. 109 at 11.

The Court agrees with defendants that Mr. Levin's testimony regarding "post-claim underwriting" should be excluded.  Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403.  First, plaintiff does not respond to defendants' argument in a meaningful way. Plaintiff simply states that this is a "factual issue" to be resolved at trial.  Docket No. 109 at 11.

Given that the issue is what statements plaintiff made on her application and not whether she in fact had a pre-existing condition – something that plaintiff does not

appear to contest – allowing Mr. Levin to opine on the post-claim underwriting process risks unfair prejudice, confusion of the issues, and misleading the jury.  If plaintiff is allowed to put on evidence regarding a practice that is not at issue, the probative value of that testimony would be substantially outweighed by prejudice to defendants from the jury focusing on defendants' alleged underwriting process rather than on the statements plaintiff made on her application.  Defendants, like other insurers, require applicants to make certain representations on their application and warn those applicants of the consequences of lying.  Docket No. 100 at 12-13.  Thus, testimony regarding "post-claim underwriting" is untethered from the issue of what statements plaintiff made on her application and, as a result, any probative value of testimony on post-claim underwriting is substantially outweighed by prejudice to the defendants based on risk of confusion of the issues and misleading the jury.  Finally, Mr. Levin's testimony on this issue might encourage the jury to make a decision on "improper basis," namely, that defendants purportedly shady underwriting practice means that they unreasonably delayed plaintiff's claim.  *See Irving*, 665 F.3d at 1213.  As a result, Mr. Levin may not opine on "post-claim underwriting" or defendants' alleged use of that process.

### C.  Defendants' Motion to Exclude Mr. Kezer and Mr. Levin as Duplicative

Defendants argue that Mr. Kezer's and Mr. Levin's testimony is duplicative and any duplicative testimony should be excluded pursuant to Rule 403.  Docket No. 100 at 14; Docket No. 101 at 14.  Defendants do not identify the duplicative testimony and merely assert that two expert attorney witnesses "may result in unfair prejudice" and "[p]laintiff will needlessly present cumulative evidence" without further discussion.  Docket No. 100 at 15; Docket No. 101 at 15.  Plaintiff responds that there "may be

16

overlap" between the two experts, the status of the experts as lawyers is irrelevant to the analysis, and it is premature to conclude that the evidence is cumulative. Docket No. 108 at 12-13; Docket No. 109 at 12-13.

Rule 403 states that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Fed. R. Evid. 403. Without identifying which opinions are cumulative, defendants ask the Court to weigh the evidence to analyze whether the proposed testimony of Mr. Levin and Mr. Kezer will be duplicative. The Court's Practice Standards state that "[m]otions in limine are discouraged when the motion cannot be resolved until evidence is presented at trial. Instead, such evidentiary issues can be flagged in a trial brief." Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.E. The Court finds that the allegedly cumulative nature of Mr. Levin and Mr. Kezer's testimony is better addressed at trial. *See Gallardo ex rel. Gallardo v. United States*, No. 10-cv-00868-PAB-CBS, 2012 WL 694390, at *1 (D. Colo. Mar. 1, 2012) (collecting cases).

### D. Plaintiff's Motion to Exclude Testimony of Dr. Kenneth Beckman

Plaintiff moves to preclude Dr. Beckman "from testifying at trial" and also seeks to exclude specific opinions of Dr. Beckman. Docket No. 102 at 4-5, 15. Dr. Beckman was disclosed by defendants as an expert on the insurance industry, its business practices, and claim coding. Docket No. 102-2 at 1-3. Plaintiff seeks to exclude the following opinions: (1) "Integon and Meritain had a reasonable basis to initiate an investigation to determine whether Ms. Sands made any misrepresentations in her applications for both the First Short Term Medical plan and the Second Short Term

Medical Plan"; (2) "Meritain acted promptly and reasonably to gather information from Ms. Sands' prior healthcare providers and provide such documentation to Integon for review and determination"; (3) "Integon acted timely in paying covered benefits due under both Short Term Medical Plans"; (4) "I see no evidence that Integon or Meritain unreasonably delayed or unreasonably denied payment for any covered claim." Docket No. 102 at 4 (citing Docket No. 102-2 at 6-7). Plaintiff has four general categories of objections to Dr. Beckman's opinions: (1) Dr. Beckman is unqualified; (2) Dr. Beckman's opinions are unreliable; (3) Dr. Beckman is biased; and (4) in reply, that the full breadth of Dr. Beckman's opinions was not disclosed. *Id.* at 9-14; Docket No. 116 at 3-4. Plaintiff also lists several opinions in the rebuttal report that she believes should be excluded. *See* Docket No. 102 at 4-5.

> 1. *"Integon and Meritain had a reasonable basis to initiate an investigation to determine whether Ms. Sands made any misrepresentations in her applications for both the First Short Term Medical plan and the Second Short Term Medical Plan"*

Plaintiff seeks to exclude Dr. Beckman's opinion on Integon and Mertain's basis for initiating their fraud investigation because she argues that Dr. Beckman is not qualified as an expert in insurance bad faith cases. Docket No. 102 at 5-6. Plaintiff argues that Dr. Beckman is a physician, not a lawyer or claims adjuster, and that, while he served as vice president for a medical insurance company, "he has no expertise or specialized knowledge with respect to Colorado common law bad faith, Colorado statutory bad faith, or Colorado's Prompt Payment Statute." *Id.* at 6. Defendants, who have the burden of demonstrating the admissibility of the opinions, respond that Dr. Beckman is (1) board certified in Family Medicine, as well as being a certified Physician

18

Executive and Professional Coder, (2) holds a medical degree and a graduate business degree, (3) practiced as a family physician for ten years, (4) has been involved "on the business side of medicine for the last 25 years," including working for insurance companies, and (5) "has published articles on documentation requirements for coding under the ICD-10 and the Affordable Care Act."  Docket No. 107 at 7-8.

Under Rule 702, an expert's qualifications may derive from knowledge, skill, experience, training, or education.  "[A]s long as an expert stays within the reasonable confines of his subject area, our case law establishes a lack of specialization does not affect the admissibility of the expert opinion, but only its weight." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quoting *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996)) (quotations and alterations omitted); *see also Zuchowicz v. United States*, 140 F.3d 381, 387 (2d Cir. 1998) ("[D]isputes as to the strength of his credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility of his testimony.").

Furthermore, "Rule 702 does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training." *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011).  A court "should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court." *Id.*

The Court finds that Dr. Beckman is qualified to testify as an expert witness on

claim coding and insurance practices, such as underwriting investigations and case review.  Dr. Beckman's report demonstrates a familiarity with how claims are processed, coded, and investigated.  He has over two decades of experience in the medical industry, including his position as vice president of an insurance company.  As a result, Dr. Beckman has "technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or determine a fact in issue."  Fed. R. Evid. 702(a).  Dr. Beckman's opinion that defendants had a reasonable basis to initiate an investigation will not be excluded.

> 2. "Meritain acted promptly and reasonably to gather information from Ms. Sands' prior healthcare providers and provide such documentation to Integon for review and determination"

Plaintiff seeks to exclude Dr. Beckman's opinion that Meritain acted "promptly and reasonably" in gathering information from plaintiff's prior healthcare providers and in sending that information to Integon for review on the basis that Dr. Beckman is unqualified to give such an opinion.  Docket No. 102 at 4-6.

The Court finds that Dr. Beckman is not qualified to discuss industry standards as they relate to bad faith and delay of claims.  His report does not demonstrate a familiarity with industry standards or the requirements of Colorado insurance law.  *See* Docket No. 102-2 at 1-3.  Defendants concede that Dr. Beckman "has no expertise in Colorado law" and state that Dr. Beckman will not "tell the jury the [d]efendants' conduct does or does not constitute bad faith."  Docket No. 107 at 6.  However, Dr. Beckman's opinion that defendants acted "promptly and reasonably" on its face suggests that Dr. Beckman is stating an opinion about defendants' actions when measured against relevant insurance industry standards.  Yet, Dr. Beckman's report contains no reference

20

to industry standards, and defendants admit that Dr. Beckman has no expertise in

industry standards or Colorado insurance law.  As a result, Dr. Beckman no basis to

discuss industry standards or opine that defendants' actions were or were not "prompt"

and "reasonable."  Therefore, Dr. Beckman's opinion that Meritain acted "promptly and

reasonably" in gathering information from plaintiff's prior medical providers will be

excluded.

> ### 3.  *"Integon acted timely in paying covered benefits due under both Short Term Medical Plans"*

Plaintiff seeks to exclude Dr. Beckman's opinion that Integon was timely in

paying covered benefits under both short-term medical plans because Dr. Beckman is

unqualified.  *See* Docket No. 102 at 4-6.  The Court finds, for the reasons stated for Dr.

Beckman's second opinion, that Dr. Beckman is unqualified to opine on the timeliness

of payments without any familiarity with Colorado law or industry standards.  As a result,

Dr. Beckman's opinion that Integon acted timely in paying covered benefits under both

short-term medical plans will be excluded.

> ### 4.  *"I see no evidence that Integon or Meritain unreasonably delayed or unreasonably denied payment for any covered claim."*

Plaintiff seeks to exclude Dr. Beckman's opinion that there is no evidence that

defendants unreasonably delayed or denied payment for any covered claim because

Dr. Beckman is unqualified to render such an opinion.  *See* Docket No. 102 at 4-6.

Again, there is no evidence that Dr. Beckman has any experience with industry

standards or Colorado insurance law, and defendants do not claim that he does.

Docket No. 107 at 6.  For the same reasons as stated for Dr. Beckman's second and

third opinions, Dr. Beckman is not qualified to offer his opinion on whether defendants

21

unreasonably delayed or denied payment.  As a result, his opinion that he sees "no

evidence" that defendants unreasonably delayed or denied payment will be excluded.

> 5.  *"The investigation into whether Ms. Sands intentionally misrepresented*
> *information contained in her enrollment form was triggered around September*
> *28, 2017*."

Plaintiff seeks to exclude Dr. Beckman's opinion that the claim triggering date

occurred on September 28, 2017.  Plaintiff argues that he lacks a proper methodology

and utilizes "incorrect facts and speculative leaps."  Docket No. 102 at 8-12.

"[N]othing in either Daubert or the Federal Rules of Evidence requires a district

court to admit opinion evidence that is connected to existing data only by the *ipse dixit*

of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Rule 702 requires

that expert testimony be "helpful[] to the trier of fact."  *Werth v. Makita Elec. Works, Ltd.*,

950 F.2d 643, 648 (10th Cir. 1991).  "[C]onclusory opinions, which require blind

acceptance of the expert's *ipse dixit*, are never helpful."  *Huang v. Marklyn Grp. Inc.*,

No. 11-cv-01765-REB-BNB, 2014 WL 3559367, at *5 (D. Colo. July 18, 2014).  Instead,

expert testimony must be "based on sufficient facts or data" and be "the product of

reliable principles and methods," and that the expert "reliably appl[y] the principles and

methods to the facts of the case."  Fed. R. Evid. 702(b)-(d).

Dr. Beckman's initial report states that, after plaintiff's first injury, plaintiff's

husband provided medical staff with a history that included alcohol abuse and "[t]he

claims submitted by Sky Ridge included the diagnosis of alcohol abuse and

withdrawal."  Docket No. 102-2 at 5.  In his rebuttal report, Dr. Beckman explains the

difference between "CPT" codes and "ICD-10" codes, stating that CPT codes "describe

medical, surgical and diagnostic services performed by a provider" and ICD-10 codes "are codes used by providers to represent diagnoses."  Docket No. 102-3 at 11-12 (emphasis omitted).  In relation to the claim-triggering date, Dr. Beckman opines that, "[w]hile it may be true that certain claims were submitted to Meritain on and before September 8, 2017, such claims did not contain diagnostic codes that would have otherwise triggered an investigation" because the September 8, 2017 claims "did not contain any diagnostic codes related to alcohol abuse or treatment – codes that might trigger an investigation into possible misrepresentation."  *Id.* at 13.

The Court finds that Dr. Beckman has sufficiently explained his opinion on when the claim-triggering date occured.  Dr. Beckman discusses the difference between types of codes – a topic of which he is qualified to opine – how those codes are entered, and when the relevant investigation-triggering codes were entered such that defendants would be aware of possible misrepresentation.  *Id.* at 11-13.

Plaintiff argues that Dr. Beckman "makes no note" of when plaintiff's claims "were initially received, what additional information the [d]efendants purportedly required . . ., when the [d]efendants submitted their requests for additional information, or when the [d]efendants were in receipt of such additional information," and that Dr. Beckman failed to reference "a single Colorado statute, regulation, or industry standard."  Docket No. 102 at 9.  The Court finds this argument unpersuasive.  Dr. Beckman provides the necessary steps to reach his claim-triggering date, and reaching that date does not appear to rest on any insurance industry standard but rather on what codes are received and when.  Dr. Beckman's lack of familiarity with Colorado insurance law and industry standards has already been discussed.  Dr. Beckman may

23

not use his opinion on the claim-triggering date to opine whether defendants met insurance industry or legal standards.  To the extent that plaintiff believes Dr. Beckman's opinion is wrong based on "[i]ncorrect facts and [s]peculative leaps," Docket No. 102 at 10-11, "[t]he accuracy of the facts themselves is an issue more appropriately reserved for trial."  *TBL Collectibles*, 285 F. Supp. 3d at 1187 (citing *Crabbe*, 556 F. Supp. 2d. at 1224) ("The accuracy of the assumption is an issue for trial because it affects the weight of the opinion.")).

### 6.  Dr. Beckman's Opinion on Dermatology Records

Plaintiff apparently seeks to exclude Dr. Beckman's opinion regarding why defendants requested medical records from plaintiff's dermatologist.  Docket No. 102 at 11-12.  Plaintiff argues that (1) her "dermatology records have absolutely nothing to do with her diagnosis of a brain bleed" and (2) defendants' policies state that dermatology records are only requested "if diagnosis is related to skin conditions."  *Id.* at 12.  Plaintiff thus appears to be making a relevancy argument pursuant to Rule 403, but does not cite the standard or note any specific opinion that should be excluded, as required by the Practice Standards.  As a result, Dr. Beckman's opinion on defendants' seeking of plaintiff's dermatology records will not be excluded.

### 7.  Rebuttal Opinions

Plaintiff seeks to exclude several opinions in Dr. Beckman's rebuttal report, although she fails to identify the reasons for excluding them other than that they are "not the proper subject of expert testimony."  *See* Docket No. 102 at 4-5.  However, plaintiff does not explain why Dr. Beckman is unqualified to discuss (1) medical underwriting, (2) ICD coding, (3) billing practices, (4) commencement of a

misrepresentation investigation, (5) pre-existing condition review, or (6) whether the hospital knew that plaintiff had no insurance. *See id.* These rebuttal topics fall squarely in Dr. Beckman's expertise in claim coding and industry practice and plaintiff has offered no argument why they should be excluded. As a result, plaintiff's motion as to these opinions is denied.

### 8. Bias

Plaintiff seeks, under Rule 403, to prevent Dr. Beckman from testifying in any manner due to Dr. Beckman's alleged bias in favor of defendants. Docket No. 102 at 12-13. Plaintiff argues that Dr. Beckman has a consulting agreement with Integon's holding company, worked for that holding company's predecessor, and worked for an insurance company that the Colorado Department of Insurance fined for delayed payment of claims in 2009. *Id.* at 13-14. Defendants respond that this is a "smear campaign" based on hearsay. Docket No. 107 at 14-15.

The Court finds that Dr. Beckman's consulting agreements, prior work with Integon's corporate predecessor, and alleged employment for that predecessor when it was fined, are not grounds to disqualify Dr. Beckman under Rule 403. Rather, "any supposed bias may be questioned on cross examination and presented to the jury." *Mathison v. Wilson*, No. 14-cv-03345-RM-KLM, 2017 WL 4227243, at *3 (D. Colo. Mar. 21, 2017); *see also U.S. ex rel. Maxwell v. Kerr-McGree Chem. Worldwide, LLC*, No. Cv-01224-PSF-CBS, 2006 WL 2053534, at *3 n.1 (D. Colo. July 21, 20016) ("The fact that Maxwell is an expert witness and has a financial stake in this case, does not in any manner disqualify him as an expert in this case.").

The cases that plaintiff cites are distinguishable.  First, in *United States v. Kelley*, 6 F. Supp. 2d 1168 (D. Kan. 1998), the court never reached the question of impermissible bias and, instead, excluded the expert based on his lack of qualifications. *Id.* at 1184-85.  While the court acknowledged that a line of cases recognized that bias may be impermissible under Rule 403 when "the experts had affirmatively sought employment from the plaintiffs and that the experts had preconceived notions before the litigation," the court never applied that standard.  *Id.* at 1183.  In *Conde v. Velsicol Chemical Corp.*, 804 F. Supp. 972 (S.D. Ohio 1992), the court noted that, for the the doctor expert, who was a party to the case, the question was whether the expert was "so obsessed" with the defendant's alleged "tortious conduct that he cannot function as an expert at trial." *Id.* at 984.  The court held that, even with the expert's significant emotional and financial stake in the case, it is "the province of the jury to weigh the credibility of witnesses, including witnesses testifying as experts."  *Id.* at 986-87. Finally, in *In re Air Crash Disaster*, 737 F. Supp. 427, 430 (E.D. Mich. 1989), the court found that an expert was an "ardent supporter and leader of the Right to Life movement," and, as a result, his opinion on when a fetus became viable could not create a genuine issue of material fact to survive summary judgment.  *Id.*

Even if these cases were applicable, they would be insufficient to conclude that Dr. Beckman is so biased that he is unable to proceed as an expert.  There is no evidence that Dr. Beckman is "affirmatively" seeking employment from defendants. Additionally, the fact that Dr. Beckman worked for a company that was fined for delayed payments over eleven years ago does not demonstrate that he is an advocate for

delaying insurance payments, which plaintiff seems to be implying.  Any bias can be explored during cross examination.

### 9.  Lack of Disclosure

Finally, in reply, plaintiff argues that the opinions that defendants discuss in their response were not disclosed in Dr. Beckman's expert report.  Docket No. 116. at 2-3. Specifically, plaintiff argues that Dr. Beckman never disclosed that he would (1) discuss short term medical plans, (2) how claims are submitted and processed, (3) and how investigations into misrepresentations and pre-existing conditions are triggered and conducted."  *Id.*

Federal Rule of Civil Procedure 37(c)(1) provides that, when a party does not identify information required by Federal Rule of Civil Procedure 26(a) or (e), that information may not be used, unless the failure was substantially justified or is harmless.  Fed. R. Civ. P. 37(c)(1); *see also Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

Contrary to plaintiff's assertion, Dr. Beckman's rebuttal report makes several references to short term medical plans, claims processing, and investigations.  For example, Dr. Beckman explains short-term medical plans in the context of the Affordable Care Act, Docket No. 102-3 at 7, the basic premise of a short term medical policy, *id.* at 8, medical underwriting with regards to short term plans, *id.*, and the purpose of short term medical products.  *Id.* at 9.  Dr. Beckman also discusses the differences in underwriting and fraud investigations, *id.*, what types of codes and claims thresholds might trigger an investigation, *id.* at 10, how certain claims are processed

depending on what codes are issued, *id.* at 11-12, and how pre-existing conditions may or may not be covered in plaintiff's policies. *Id.* at 19-22. As a result, Dr. Beckman's opinions were properly disclosed with his expert report.

### E. Colorado Prompt Payment Statute

In the briefing on the motions to exclude Mr. Kezer, Mr. Levin, and Dr. Beckman, the parties raise the issue of the interpretation of Colorado's Prompt Payment Statute, Colo. Rev. Stat. § 10-16-106.5. *See, e.g.*, Docket No. 116 at 4-5. The issue is fully briefed. The Court will interpret the statute before the trial begins.

## IV. CONCLUSION

Wherefore, it is

**ORDERED** that defendants' Motion to Exclude Bradley A. Levin [Docket No. 100] is **GRANTED IN PART** and **DENIED IN PART**. It is further

**ORDERED** that defendants' Motion to Exclude John Kezer [Docket No. 101] is **GRANTED IN PART** and **DENIED IN PART**. It is further

**ORDERED** that plaintiff's Motion to Exclude Dr. Kenneth Beckman [Docket No. 102] is **GRANTED IN PART** and **DENIED IN PART**.

DATED November 30, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge